**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GUSTAVO NAVARRETE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-CV-00347-SMY-SCW |
| | ) | |
| MADISON COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINITFF'S REPLY MEMORANDUM IN RESPONSE TO DEFENDANT'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S REQUEST TO AWARD
EQUITABLE RELIEF**

Comes Now the Plaintiff, by and through his undersigned counsel, and for his Reply

Memorandum in Support of his Request to Award Equitable Relief, states as follows:

**Damages Generally**

This district court wields considerable discretion in calculating damages, and its decision

is not reversible unless clearly erroneous. *Albermarle Paper Co. v. Moody*, 422 U.S. 405 (1975).

**Plaintiff Mitigated his Damages regarding Back Pay**

Madison County's argument that Navarrete failed to mitigate is grounded upon one

allegation: that Navarette only applied for one law enforcement position and that had he

exercised reasonable diligence he would have been able to find comparable work. Madison

County offers nothing more in support of its argument. This evidence is insufficient to carry

Madison County's burden.

The Seventh Circuit emphasizes that the employer "must prove *both* that the claimants

were not reasonably diligent in seeking other employment, *and* that with the exercise of

reasonable diligence there was a reasonable chance that the claimants might have found

comparable employment." *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th

1

Cir.1990).  (internal alterations and quotation marks omitted) (emphasis in original); *see also United States v. City of Chicago*, 853 F.2d 572, 578 (7th Cir.1988); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir. 1986). The Seventh Circuit has also rejected a mitigation defense when the employer fails to demonstrate that the claimants might have found comparable work. *Gurnee Inn*, 914 F.2d at 818-19. ("We agree with the district court that, because Gurnee failed to establish that there was a reasonable chance the claimants could have found comparable employment, the defendant failed to sustain its burden of proof."). In *Gurnee* the Defendant, just like Madison County in this case, failed to introduce evidence of the availability of comparable jobs. *Id.* at 818. See also *Gaddy v. Abex Corp.*, 884 F.2d 312, 319 (7th Cir. 1989)(affirming trial court's decision to reject employer's mitigation defense position that claimant failed to mitigate damages where employer failed to show there was a reasonable probability claimant would have received an offer had she pursued job opportunities).

The reasoning behind the requirement that the employer demonstrate the existence of available work makes sense: an employee might stop looking for work if none is available, and under that circumstance, the plaintiff's decision to stop looking would itself be reasonable. Ultimately, failure to mitigate is an affirmative defense, and the burden rightfully rests on the defense. *Gurnee* at 818. ("We emphasize that the employer bears the burden of proving a failure to mitigate.").

Madison County was required to prove that there was a reasonable chance that Navarette might have found comparable employment, and it failed to carry its burden. Navarette's back-pay award award should not be reduced for failure to mitigate.

In *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Supreme Court held that under the mitigation doctrine, the employee "need not go into another

line of work, accept a demotion, or take a demeaning position." An employee "need not `seek employment which is not consonant with his particular skills, background, and experience' or `which involves conditions that are substantially more onerous than his previous position.'" *Id.* at 231 n. 16, 102 S.Ct. at 3065 n. 16 (quoting *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1320-21 (D.C. Cir.1972)).

As such, Navarette was not required to go into another field; but he did. He found employment within one week of being wrongfully terminated. He left that job for a better paying job with the National Archives. He left that job for a better job at the Veterans Administration. While these jobs are in no way comparable to Navarette's career with Madison County in terms of pay, duties, field of interest or career advancement. Madison County correctly states that a "comparable job" is one that affords the prevailing party virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the position from which he was discharged. It is clear that Navarette's job with the VA is not a "comparable job" with his career at Madison County.

The job with the Sherriff's office was a job he wanted to turn into a career. (Exhibit 51, para 46). He started his career relatively later in life at the age of 48. (Exhibit 51, para 47). At the time of his termination he was one of the oldest jailers. (Exhibit 51, para. 48). He did so after completing a 20-year career of service in the U.S. Air Force. (Exhibit 51, para. 47). He pursued and obtained his degree in Criminal Justice at St. Louis University while employed for Defendant. (Exhibit 51, para. 49). Had he not been wrongfully terminated Navarette intended to work until December 1, 2027, when reached twenty years of service and turned 66 years of age. (Exhibit 51, para. 36). The primary reason he wanted to work 20 years for the Defendant was for the pension. (Exhibit 51, para. 52). He was eight years into his 20-year plan when he was wrongfully terminated. (Exhibit 51, para. 53). It has been nearly five years since that wrongful termination. (Exhibit 51, para. 54).

Navarette has been unsuccessful finding a comparable job to what he had with the Defendant. (Exhibit 51, para.  55). He is currently earning approximately half of what he earned with the Defendant. (Exhibit 51, para.  56). He applied for numerous jobs. (Exhibit 51, para. 30). He looked for employment within his field but was unsuccessful in finding a similar job. (Exhibit 51, para. 31) (8/6/21 Trial Transcript at page 9). He used the USA Jobs website platform to search for work. (8/6/21 Tr. Trans., page 9). There was only one job available in the field of criminal justice and it was located at Scott Air Force Base. (8/6/21 Tr. Trans., p. 9). He applied for that security job at Scott Air Force Base but did not receive the job. (Exhibit 51, para. 31). That is not surprising in light of the fact that he had to inform prospective employers that he had been terminated by Defendant for misconduct. (Exhibit 51, para. 32). Navarette testified that his job search revealed that there were no other jobs in his field available. (8/6/21 Tr. Trans., p. 9).

Navarette testified that he did not seek employment with any other law enforcement agencies. (8/6/21 Tr. Trans., p. 9).  No testimony was elicited, or evidence offered, that there were in fact law enforcement jobs available at the time that Navarette was qualified to hold. Nevertheless Navarette testified that he did not seek out those positions because he did not believe anyone would hire him in light of his termination by Madison County. (8/6/21 Tr. Trans., p. 19).  See *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir. 1986)(affirming decision of trial court to excuse the claimant's failure to search for work in his chosen field of car sales based on threats to blackball and the fact there were few women in the field).

Navarette also testified that most law enforcement agencies have residency requirements and that he had significant ties to his chosen local community and did not want to relocate. (8/6/21 Tr. Trans., p. 19-20 The fact that he was 56 years old and looking for an entry level position in his field did not help either. (Exhibit 51, para. 33).

**Plaintiff Mitigated his Damages regarding Front Pay**

Front pay represents the wages the plaintiff would have earned had she not been fired
measured from the date of the judgment to some reasonable point in the future. *See McKnight v.
General Motors Corp.,* 908 F.2d 104, 116 (7th Cir. 1990).  There must be evidence of "the length
of time the plaintiff expects to work for the defendant" to support a front-pay award. *McKnight v.
General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992). Plaintiff must show "the length of time
the plaintiff expects to work for the defendant". *Id.*  "Front pay is awarded for a reasonable period of
time, until a date by which the plaintiff, using reasonable diligence, should have found comparable
employment." *Ward v. Tipton County Sheriff Dep't*, 937 F.Supp. 791, 796 (S.D.Ind.1996)
(citing *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1045 (7th Cir.1994)).

Madison County correctly states that a "comparable job" is one that affords the prevailing
party virtually identical promotional opportunities, compensation, job responsibilities, working
conditions and status as the position from which he was discharged. It is clear that Navarette's
job with the VA is not a "comparable job" with his career at Madison County.

Navarette offered un-rebutted evidence about his intentions to work with Madison
County for 20 years. He was more than 8 years into his 20-year plan when he was wrongfully
terminated. The IMRF Pension was the driving force behind Navarette's desire to work for 20
years with Madison County.

**Plaintiff provided the Court with an appropriate discount rate**

Plaintiff has provided this court with a proposed discount rate of 0%. Defendant has
offered no evidence that a 0% rate inappropriate. Navarette. Madison County has not objected to
Navarette's request for this court to take Judicial Notice of the 20-year Treasury Note Yield or
the Consumer Price Index ("CPI"). These are the two pieces of data that are commonly used to
consider the appropriate discount rate. See, *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S.

523, 537-538 (1983)(use of the CPI to calculate inflation); *United States v. Certain Land Situated in the City of Detroit*, 286 F.Supp.2d 865, 867 (E.D.Mich. 2003)((an investment in U.S. Treasury securities is safe because an investor will not lose the principal underlying the investment).

Navarette requests that the Court apply a 0% net discount rate for purposes of determining the present value of the Sick Leave Loss (payable at retirement of 12/1/27), the future Health Insurance Replacement costs (monthly from date of judgment until date of retirement at 12/1/27), Pension Losses (from date of retirement for 17 years), and Front Pay (annually from date of judgment until date of retirement at 12/1/27). A 0% net discount rate is appropriate. The current Consumer Price Index, the gold standard for measuring inflation, is currently 5.5%. (Exhibit 62) The current yield on a 20-year Treasury Note is 1.86%. (Exhibit 63)

The cases cited by Madison County merely stand for the proposition that a discount rate must be provided to the trial court for its consideration. Navarette has done so.

**An Expert Witness is not necessary for simple mathematical calculations**

Madison County argues that the Seventh Circuit "routinely relies" upon expert testimony to determine the appropriate amount of future earnings, fringe benefits and prejudgment interest. Madison County has offered no authority for the proposition that expert testimony is required, particularly for relatively simple mathematical equations that are at issue here. The 7th Circuit in *Coston v. Plitt Theatres, Inc.* held that:

> This court requires district judges in this circuit to indicate the steps by which they arrive at damage awards for lost future earnings and we have described that a reasonable calculation of lost future earnings would require estimating first what an individual's salary would have been in each year until his retirement, then the probability that he would actually be alive and working in those years, and finally the correct discount rate by which to reduce the estimated future earnings to a present, lump-sum value.

831 F.2d 1321, 1334-35 (7th Cir. 1987)(internal citations omitted). See also, *Jones & Laughlin*

*Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983). In *Chesapeake & Ohio Ry. Co. v. Kelly*, the U.S.

Supreme Court noted:

> We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest or for various periods covering the ordinary expectancies of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum.

241 U.S. 485, 491 (1916).

Contrary to Madison County's contention, Navarette's calculation of damages is

reasonably certain. And, as the 7th Circuit has noted, the "certainty" of the award requirement is

not required for a court to fashion equitable remedies such as those requested by Navarette as

opposed to common law remedies. *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290,

1299 (7th Cir. 1987).

Importantly, Madison County has not objected to Navarette's Back Pay Calculations,

Front Pay Calculations, Sick Leave Pay Calculations, Health Insurance Loss Calculations,

Pension Loss Calculations, or Pre-Judgment Interest Calculations.

Moreover, Madison County has not objected to any of Plaintiff's requests for Judicial

Notice and therefore this Court should take Judicial Notice of those Exhibits. Navarette

requested that the Court take Judicial Notice of Exhibits 20, 52, 58, 60, 62, and 63 and Madison

County did not object.

Exhibit 52 shows the Prime Interest Rate which is used to calculate prejudgment interest.

Exhibit 52 is the printed version of https://fred.stlouisfed.org/series/DPRIME.  This is a type of

7

document that courts will take judicial notice of. See, *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Betz v. Greenville Correctional Inst.*, 2014 WL 812403 at *1 (S.D.Il. Mar. 3, 2014); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 286 F.3d 600, 607 (7th Cir. 2002).

Exhibit 20 is the salary schedule found at https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2021/GS.pdf. This document shows the salary that Navarette will earn at the VA into the future. This is a type of document that courts typically take judicial notice of.  See, *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003);7.

Exhibit 60 is a Life Table showing Navarette's life expectancy. Exhibit 60 is the printed version of **https://www.cdc.gov/nchs/data/nvsr70/nvsr70-1-508.pdf.** and *https://ftp.cdc.gov/pub/Health_Statistics/NCHS/Publications/NVSR/70-01/.* This is a type of document that courts typically take judicial notice of. *See, U.S. v. Bailey*, 97 F.3d 982, 985 (7th Cir. 1996)(BUREAU OF THE CENSUS, UNITED STATES DEPARTMENT OF COMMERCE, *Statistical Abstract of the United States:* 1995 86 (115th ed.1995)); *See also*, *Kasongo v. U.S.*, 523 F.Supp.2d 759, 790 (N.D.Il. 2007).

Exhibit 62 is the June 2021 Consumer Price Index from the U.S. Department of Labor, Bureau of Labor Statistics, found at **https://www.bls.gov/news.release/pdf/cpi.pdf.** This is a type of document that courts typically take judicial notice of.  See, *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011)(Judicial Notice of the Consumer Price Index).

Exhibit 63 is the Daily Treasury Long Term Rate Data from the U.S. Department of Treasury website at **https://fred.stlouisfed.org/graph/?id=DGS20,#; https://fred.stlouisfed.org/graph/?id=DFII20,#**   This is a type of document that courts typically take judicial notice of. *See, In re Motors Liquidation*, 591 BR 501, 522 (SD New York

2018)(judicial notice of a 30-year treasury interest rate); *In re Federal-Mogul Global*,

Bankruptcy No. 01-10578 (RTL), Civil Action No. 05-59 (JHR). Bankruptcy No. 01-10578

(RTL), Civil Action No. 05-59 (JHR).(D.De. Aug. 19, 2005)(judicial notice that the Board of

Governors of the Federal Reserve System reported the 30 Year Treasury Constant Maturity

Rate); *In re Walkabout Creek, Ltd. Dividend Housing Ass'n*, 460 BR 567, 574 (Nov. 14, 2001

D.C.).

      The foregoing documents, coupled with the earnings and fringe benefit records provide

all the tools necessary to complete the simple math involved in calculating the damages. Those

calculations are contained in Plaintiff's initial submission.

**Navarette is not barred from Lost Benefits because he is currently receiving benefits at his new employer**

      Madison County cites no authority whatsoever for the proposition that Navarette is barred

form lost benefit damages simply because Navarette is receiving reduced benefits with the VA,

or receiving benefits that he now has to pay for in stead of receiving as part of his employment

with Madison County. The *Davis* decision relied upon by Madison County does not stand for the

proposition that a claimant is not entitled to lost benefit damages if the claimant finds alternative

work that has benefits that are clearly less than the benefits claimant enjoyed before he was

wrongfully terminated.

**Tax-Component of Award**

      Madison County quibbles with estimate that Navarette and his wife have made about

their 2021 income. Given the time of year when the anticipated judgment will be entered, it is

impossible to know with exact certitude what the Navarette's final 2021 income will be.

However, they have estimated their years end income based upon what they have made so far

this year. There is nothing unreasonable or speculative about this estimation. Madison County

has offered no evidence that this assumption is unreasonable.

HOFFMAN & SLOCOMB, LLC

By: /s/ *Paul T. Slocomb*
     Paul T. Slocomb, #6226129
     1115 Locust Street, 4th Floor
     St. Louis, MO  63101
     (314) 436-7800
     Fax (314) 231-0323
     Attorney for Plaintiff

## CERTFICATE OF SERVICE

A copy of the foregoing was served by ECF and sent via e-mail this 24th day of August, 2021, to:

Ms. Heidi Eckert
Attorney at Law

/s/ Paul T. Slocomb