## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GUSTAVO NAVARRETE,

      **Plaintiff,**

      **vs.**                                 **Case No. 17-cv-347-SMY**

**MADISON COUNTY, ILLINOIS,**

      **Defendant.**

### ORDER

On April 5, 2017, Plaintiff Gustavo Navarrete filed the instant lawsuit against Madison County Sheriff's Office. He filed an Amended Complaint on October 17, 2017, naming Madison County, Illinois as the defendant and alleging discrimination and retaliatory termination of his employment based upon his national origin in violation of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. §2000e *et seq.*[1] On June 30, 2021, a jury returned a verdict in favor of Navarrete and awarded $250,000 in compensatory damages.

Currently before the Court are Plaintiff's Motion for Equitable Relief (Doc. 122) and Petition for Attorneys' Fees (Doc. 129). Defendant opposes both motions. The Court held an evidentiary hearing regarding Plaintiff's Motion for Equitable Relief on August 6, 2021, and admitted various exhibits. The Court also took judicial notice of several exhibits.

### Back Pay

Prevailing Title VII plaintiffs are "presumptively entitled to full relief." *Hutchinson v. Amateur Elec.Supply*, 42 F.3d 1037, 1044 (7th Cir. 1994) citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). Once the jury has found that there has been employment discrimination, there is then a presumption that the employee is entitled to back pay. *David v. Caterpillar, Inc.*,

---

[1] Madison County Sheriff's Department was terminated as a Defendant with the October 17, 2017 filing of the Amended Complaint against Madison County, Illinois.

324 F.3d 851, 865 (7th Cir. 2003). Back pay is "the difference between actual earnings for the period and those which she would have earned absent discrimination by defendant." *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599 ,6060 (7th Cir. 1985). Back pay covers the period from the time of firing to the date of judgment. *See David*, 324 F.3d at 865. Back pay is then reduced by interim earnings, "wages (or the like) earned by a discriminated upon employee in the period after his discharge but before judgment that, but for the discrimination, would not have been earned." *Chesser v. State of Ill.*, 895 F.2d 330, 337 (7th Cir. 1990). Defendant has the burden to show that a plaintiff has failed to mitigate his damages or that damages are in fact less than what the plaintiff asserts. *Hutchison v. Amateur Elec. Supp., Inc.,* 42 F.3d 1037, 1044 (7th Cir. 1994). Here, Plaintiff seeks back pay of $227,820.00 for 2016 through June 11, 2021. Defendant argues that Plaintiff's back pay award should be reduced because he failed to mitigate his damages.

The evidence shows that Plaintiff earned $63,316.98 in 2015, which was the last full year of pay that he received; Defendant ceased paying Plaintiff on January 22, 2016. The evidence further shows that at the time of his termination, Plaintiff was subject to a Collective Bargaining Agreement ("CBA") that was in effect from December 1, 2014 until November 30, 2017. Under the CBA, as a jail officer with 5 to 10 years of experience, Plaintiff was scheduled to have a base salary of $63,059 in 2016 and $64,484 in 2017. Under a CBA Agreement in effect from December 1, 2017 until November 20, 2020, Plaintiff was scheduled to earn a base salary of $67,953 in 2018, $71,013 in 2019, and 72,608 in 2020. Because no new CBA went in effect between 2020 and judgment in this case.

Regarding interim earnings, the evidence shows that Plaintiff found employment with the National Archives and earned $8,143.67 in 2016. He earned $2,087.00 in 2016 as a self-employed translator. Then, in 2017, Plaintiff earned $19,730.35 working for the National Archives until he

2

found a higher paying job with the Veteran's Administration, where he earned $5,031.99 in 2017. Plaintiff's earned wages from the VA from 2018 until June 11, 2021 were as follows:  $24,885.11 (2018); $29,115.34 (2019); $32,552.00 (2020); and $19,515.84 (2021).

A discharged employee must mitigate damages by using reasonable diligence in finding other suitable employment.  *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989).  To support a failure to mitigate theory, an employer "must prove both that the claimants were not reasonably diligent in seeking other employment, and that with the exercise of reasonable diligence there was a reasonable chance that the claimants might have found comparable employment." *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990).  Defendant argues that Plaintiff failed to mitigate his damages by failing to exercise reasonable diligence in finding other suitable employment.  Specifically, Defendant argues that Plaintiff failed to search for comparable employment, other than applying for one law enforcement position with Scott Air Force Base.

Defendant's argument that Plaintiff could have found other comparable positions or other positions wherein he would have made more income is not unsupported by the evidence.  The Defendant failed to meet its burden and provide the Court with evidence that comparable law enforcement jobs that Plaintiff was qualified to hold were available during the relevant period.  To the contrary, the evidence shows: Plaintiff intended on working for the Sheriff's office until his retirement at twenty years of service (December 1, 2027); Plaintiff has been unable to find a comparable job; Plaintiff applied for numerous jobs; Plaintiff was not hired for the security job at Scott Air Force Base; Plaintiff could not find any other jobs in the field; Plaintiff did find alternative employment in another field of work; Plaintiff started working within one week of being terminated by Defendant; Plaintiff transitioned between new jobs for better pay; and, while Plaintiff's current job does not provide him with the same pay, duties, field of interest or career

advancement as what he had with Defendant, he is actively receiving wages and working. On this evidence, the Court will not reduce Plaintiff's claim for lost wages for failure to mitigate.

Accordingly, the Court **AWARDS Plaintiff back pay in the amount of $227,820.00.**

### Prejudgment Interest

Prejudgment interest on back pay is awarded to compensate plaintiffs for the loss of the use of money. *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 274 (7th Cir. 1993). There is no statutory rate for prejudgment interest. *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998). Instead, the rate is to be determined by the Court with a starting point at market rate (or the average of the prime rate for the years in question). *Id.* The prejudgment interest accrues from the date of the loss or that the claim accrued. *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003).[2]

The evidence presented shows that Plaintiff's date of loss or the date on which his claim accrued was January 23, 2016. The Court also finds from the that the monthly Bank Prime Loan Rate published by the Federal Reserve from 2016 is reasonable. Accordingly, the Court **AWARDS prejudgment interest on the back pay award in the amount of $57,252.00.**

### Lost Benefits

An award of back pay should also include an award for lost benefits. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847-848 (2001) (holding that back pay includes lost benefits). Lost benefits include sick leave, health insurance, and pension loss. *See Graefenhain*, 870 F.3d at 1212 (pension loss is a compensable item in order to make plaintiff whole); *see Mister v. Illinois Cent. Gulf R. Co.,* 790 F. Supp. 1411, 1418 (S.D. Ill. 1992) (part of the calculation of back pay includes the value of work related benefits, like health insurance).

---

[2] Defendant does not contest or object to Plaintiff's calculations for prejudgment interest.

*Sick Leave*

The evidence establishes that Plaintiff had accumulated 363 hours of sick leave at the time

of his wrongful termination.  According to Exhibit 41, Plaintiff's rate of pay was $29.88 per hour.

Therefore, at the time of his termination, Plaintiff had accrued $10,846.44 for sick leave.

Plaintiff's arguments for additional sick leave time assumes facts not in evidence, and are therefore

speculative.  Therefore, the Court **AWARDS $10,846.44 in sick leave benefits.**

*Health Insurance*

Plaintiff received 100% of his health insurance premiums and 70% of his dependents'

health insurance premiums through his employment with Defendant.  The evidence demonstrates

that had Plaintiff selected an individual health plan for himself, his premiums would have been

from $116.91 to $123.45 every two weeks for the period of October 1, 2017 to August 1, 2021.

Accordingly, the Court Plaintiff **AWARDS $12,300.00 for past health insurance premiums.**

As compensation for future health insurance premiums, Plaintiff seeks a biweekly rate of

$123.00 from August 1, 2021 through December 1, 2027.  In support, Plaintiff presented

undisputed evidence that he intended on working through December 1, 2027 before retiring.

Accordingly, the Court **AWARDS Plaintiff $21,525.00 for future health insurance**

**premiums.**

*Pension*

The Court takes judicial notice of the Life Table identified as Exhibit 60

(https://www.cdc.gov/nchs/data/nvsr/nvsr70/nvsr70-1-508.pdf).  Plaintiff would have been 66

years of age at his intended retirement on December 1, 2027.  According to the Life Table, his life

expectancy at retirement was 17.3 years.  As such, the Court finds that Plaintiff is entitled to 17

years of pension benefits.

The Court further takes judicial notice of the bases for calculation Plaintiff's pension benefits from the Illinois Municipal Retirement Fund (IMRF), VA pension, VA Thrift Savings Plan, and IMRF Liquidation. As a result, the Court **AWARDS Plaintiff $482,067.00 for his total pension loss.**

## Front Pay

Front pay may be awarded under Title VII in cases where reinstatement is unavailable. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998). Here, it is undisputed that reinstatement is not an available option.

Front pay is the "discounted present value of the difference between the earnings an employee would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis, inferior employment." *Williams*, 137 F.3d at 953. Front pay is designed to extend for a reasonable period of time, until a date by which a plaintiff, using reasonable diligence, should have found comparable employment. *Id. quoting Ward v. Tipton County Sheriff Dep't,* 937 F. Suppl. 791, 796 (S.D. Ind. 1996); *see also Shick v. Illinois Dept. of Hum. Servs.*, 307 F.3d 605, 614 (7th Cir. 2002). If an employee obtains another job, those earnings are deducted from front pay. *Shick*, 307 F.3d at 614.

Defendant argues that Plaintiff is not entitled to front pay because of his failure to mitigate damages and find comparable employment. However, as previously found, Defendant's argument is unsupported by any evidence.

As previously noted, the evidence was uncontradicted that Plaintiff intended on working for the Sheriff's office through his retirement on December 1, 2027. Thus, the time period the Court will consider for front pay is from June 2021 to December 2027. As the evidence supports, Plaintiff would have earned $36,304 (1/2 of 2021); $72,608 (2022); $73,845 (2023); $74,464 (2024); $74,464 (2025); $74,464 (2026); and, $68,255 (through December 1, 2027). During that

same period, the evidence shows that Plaintiff has now earned or will earn $17,343 (1/2 of 2021); $36,163 (2022); $36,163 (2023); $37,293 (2024); $37,293 (2025); $38,423 (2026); and, $35,221 (through December 1, 2027).  Those amounts shall be deducted from any front pay award.

Accordingly, the Court **AWARDS Plaintiff front pay in the amount of $238,687.00.**

**Reduction of Sick Leave Loss, Health Insurance Loss, Pension Loss and Front Pay Award to Present Value**

The application of the net discount rate applies to health insurance loss, pension loss, and front pay awards.  The Court takes judicial notice of Exhibit 62, the Consumer Price Index, and Exhibit 63, the U.S. Department of Treasury Daily Treasury Long Term Rate Data.  As the Court finds no difference in the value of money from now to the future, it agrees with Plaintiff that 0% is an appropriate discount rate based upon the gold standard for measuring inflation and current yield on 20-year treasury notes.

**Tax Component Award**

The tax component award is an additional offset in Title VII discrimination cases to make a plaintiff whole and offset any increased tax burden incurred as a result of receiving a lump sum award.  *E.E.O.C. v. N. Star Hospitality, Inc.*, 777 F.3d 898, 904 (7th Cir. 2015).  The Court takes judicial notice of the Tax Tables submitted as Exhibit 68 and finds that the evidence presented regarding the increase in Plaintiff's tax bracket from 22% to 32% is reasonable and rational based upon the lump sum of unpaid back wages that Plaintiff will receive totaling $227,820.00.  Plaintiff would not have exceeded the 22% tax bracket if he had received the wages in the appropriate years. However, he will now have a one-time increased tax burden due to receiving the lump sum award. The Court **AWARDS Plaintiff the difference in tax liability; $22,782.00.**

The Court **AWARDS** Plaintiff the total sum of **$1,073,279.44** as equitable relief.

**Attorneys' Fees**

Finally, Plaintiff has petitioned for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k), which allows the prevailing party reasonable attorneys' fees including expert fees as part of the costs. Defendant's objections pertain only to (1) an alleged double-billed entry for September 4, 2018 and (2) unrecoverable expenses.

With respect to the alleged double-billed entries for September 4, 2018, the entries include: "Deposition of Lakin" for 2.5 hours and "Prepared for and took Lakin Deposition" for 6.2 hours. Defendant's position that these two entries reflect a "double-billed" entry for that date is speculative at best. The affidavit submitted by Attorney Paul T. Slocomb indicates that the time reflected in the itemized billing reflects the time that he worked on the file. Further, for each deposition taken in this matter, there are two entries on the itemized billing. Based on the supporting affidavit and documentation, the Court finds the entry for September 4, 2018 reasonable and appropriate.

Second, Plaintiff seeks to recover the following expenses: three hotel rooms for trial ($960.45), food during trial ($36.52), and mileage expenses for Paul Slocomb and Matt Hoffman ($105.28 and $264.32). Defendant objects and asserts that reimbursement for travel, lodging, and subsistence are not reimbursable. However, the standards for fee awards under Title VII are the same as those under the Civil Rights Attorneys Fees Awards Act (42 U.S.C. §1988). *Proctor v. Consolidated Freightways Corp. of Delaware*, 795 F.2d 1472, 1478 (9th Cir. 1986). With respect to attorney travel expenses, the Seventh Circuit has established that "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates – expenses for such things as postage, long distance phone calls, xeroxing, travel, paralegals and expert witnesses – are part of the reasonable attorney's fees allowed by the Civil Rights Attorney Fees Award Act." *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994)

*citing Heiar v. Crawford County*, 746 F.2d 1190, 1203 (7ᵗʰ Cir. 1984).  Since attorney travel expenses are normally billed separately from an attorney's hourly fees, those expense are separately recoverable. *Id.*  However, attorney meals are generally not recoverable. *See generally* 42 U.S.C. §1988; *see generally Fields v. City of Chicago,* 2018 WL 253716, at \*11 (N.D. Ill. 2018).  Accordingly, the Court finds the costs of the hotel room339s for trial and mileage expenses are reasonable and appropriate, but the costs for food during trial are not recoverable.

Based on the foregoing, the Court grants Plaintiff's Petition for Attorneys' Fees and **AWARDS attorneys' fees in the amount $68,025.00 and reduced costs in the amount of $4,039.45.**

**IT IS SO ORDERED.**

**DATE: March 27, 2025**

**STACI M. YANDLE**
**UNITED STATES DISTRICT JUDGE**